CASE No. 829.

## CONGDON, HAZARD & CO. v. MORGAN.

1. A purchased from B his patronage and good will in the towage business, B agreeing further not to engage, directly or indirectly, in such business. Subsequently B entered into a mercantile partnership with C, and C acted as agent for another in procuring towage business for his tug. *Held*, that B was responsible for all acts of C done under the authority of the firm, or within the scope of the partnership.

2. *Held further,* that if the firm gave their patronage in the towage business to any other than A, or if C, under the authority he possessed as a member of the firm, acted as agent for another tug, it would be a breach of B's covenant, whether he knew of such employment and agency or not.

3. All acts of the firm in procuring or employing a tug, were breaches of B's covenant.

4. A general charge, within the limits of which the jury may properly find a verdict, but which fails to define accurately the application of the law to the evidence, is not error, there being no prayer for more specific instructions.

Before HUDSON, J., Georgetown, November, 1879.

This action was commenced in May, 1878. The case is fully stated in the opinion of the court. The charge of the judge to the jury was as follows:

Whatever A. J. McQuaid, as a member of the firm of Morgan & McQuaid, did to procure towage for the "Thomas Morgan," would make Arthur Morgan responsible. If the firm of Morgan & McQuaid gave their patronage in the towage business to any than the plaintiffs, whether Morgan knew of it or not, it would be a breach of Morgan's covenant to give his patronage to the plaintiff. McQuaid, acting as the agent of the "Thomas Morgan," (without regard to who was her owner), would be an indirect engagement in the towage business by the firm of Morgan & McQuaid, and hence by Morgan, for Morgan's capital was in the firm, whether he gave the business his personal attention or not. So that if you believe, from the testimony, that the "Thomas Morgan" was brought here and put into the towage business by the firm of Morgan & McQuaid, or, that while here, *that* firm gave her their patronage in that business, either would be a breach of his covenant by Morgan not to engage directly or indirectly in the towage business, but to give his patronage to the plaintiffs.

If you find that there has been a breach of the contract by the defendant, the next inquiry will be what damages the plaintiffs are entitled to in consequence of such breach. The only actual damage of which they have given any evidence, is the towage price of three vessels, towed by the "Morgan," one for $42, another for $65, and another, if loaded with lumber, for $120,

making $227. But plaintiffs contend that they are certainly entitled to the consideration paid by them, of $4000, with interest thereon from the time of payment. I do not think so. The plaintiffs testified that they are engaged in a general mercantile business, buying rice, distilling turpentine, chartering and loading vessels, and the towage business; and that their business of towage is so interwoven and involved with their general business, that the breach of this contract has inflicted injury on them outside of the towage business, and in respect to their general business, but that they are unable to state the amount of such loss. This is about all the testimony on the subject of damages. In estimating damages, you will first take the sums in evidence, as the price of the towage of the three vessels, and allow such further sum short of $10,000, as, in your view, the plaintiffs may have suffered in their business generally, on account of the breach of this bond. Damages is a question for your consideration entirely.

To this charge, the defendants excepted. Verdict for plaintiff for $6951.34.

Defendants appealed.

*Mr. R. Dozier*, for appellants.

McQuaid was partner of Morgan, and, as such, was general agent of Morgan within the scope of the partnership. *Story on Part.*, § 101; 3 *Kent* 40–42. A partner dealing outside of the partnership business is presumed to be acting for himself; and so he must be regarded by all who deal with him. 3 *Kent* 41–44; *Story on Agency*, § 125; *Sm. Merc. Law* 70. Morgan's covenant did not prohibit him from entering into a partnership to carry on a mercantile business; if it did not prevent him, it could not prevent McQuaid. McQuaid, notwithstanding the partnership, could engage in the towage business; and his acts, as such, were not the acts of Morgan. As a partner, he had no right to make towage engagements binding upon the firm. And if such engagements do not bind the firm, they cannot bind an ignorant partner. *Story on Part.*, § 126. But the judge's charge makes Morgan responsible for acts done outside of the partnership, without his consent or knowledge.

*Id.*, §§ 168, 168 *a*, 177. And if McQuaid could act for himself, without prejudice to Morgan, he certainly could act as agent for another.

As to the measure of damages, the learned counsel cited *Sedg. on Meas. of Dam*, *200, *210, *229; 2 *Greenl. on Ev.*, §§ 254, 256, 261; 1 *McM*. 115; *Sedg. Lead. Cas*. 332, 127, 136, 543, 159, 271, 247; 2 *Spears* 550; 1 *Pet. C. C*. 86; *Dud*. 182; 8 *Reporter* 123, 300, 670; 35 *N. Y*. 210; 62 *Penna. St*. 353; 27 *Geo*. 481; 15 *M. & W*. 117; 10 *S. C*. 450; 14 *Rich*. 186.

*Messrs. Simonton & Barker*, contra.

March 12th, 1880. The opinion of the court was delivered by

WILLARD, C. J. This action was upon a money bond, with a condition in the nature of a covenant by which the obligor agreed to withdraw from the towage business in the port of Georgetown, and he would not, "directly or indirectly, engage therein again for and during the period of twenty years;" that a certain tug therein named belonging to the obligor should not be used for that purpose by any person to whom the same might be sold for two years, and should not be used for that purpose by the obligor for twenty years; and the obligor further covenanted to "give his own patronage in the towing business" to the plaintiffs, or the survivor of them, and to "give them his good will in their said business of towage in and for the port, harbor and waters of the said town, for and during the said period."

The complaint alleges a breach and damages resulting therefrom, and demands judgment for the penalty of the bond. The facts of the case, so far as they are necessary to the understanding of the questions of law brought up by the appeal, are as follows: The obligor had, previous to the giving of the bond, been engaged in the towage business, using the tug named in the bond for that purpose, and the plaintiffs, being desirous of carrying on such business, paid a large sum as the actual consideration of the obligation assumed by the defendant, by which it was agreed in substance that the obligor should retire from competi-

tion with the plaintiffs in said business, and would give them his good will and patronage. The defendant subsequently became a member of the mercantile firm of Morgan & McQuaid. The son of the obligor undertook to carry on the business of towage at that port during the time to which the covenant related, and McQuaid, the partner of defendant, acted as his agent. The question at issue was whether the defendant was, in law or in fact, implicated directly or indirectly in the conduct of this competition with the business of the plaintiffs, and whether he is answerable for with-holding his good will and patronage, contrary to his covenant, from the plaintiffs in the conduct of said business.

The Circuit judge charged "that whatever A. J. McQuaid did, as a member of the firm of Morgan & McQuaid, to procure towage for the *Thomas Morgan*, would make Arthur Morgan responsible." The *Thomas Morgan* was the vessel that was introduced in the business subsequently to the bond in competition with the plaintiffs. We must understand this as in effect charging that what McQuaid did with the authority of the firm of Morgan & McQuaid, must be regarded as having the same effect, as it regards the covenant, as if done by the obligor himself, who was a member of said firm.

When a partner acts within the scope of the partnership business, and in the due exercise of the partnership authority, he is the agent of each member of the firm individually, and of all the partners collectively. Such being the case, the act of McQuaid was the act of Arthur Morgan, his partner, when done within the scope of his partnership authority; and if the conduct of the competing business, or the interference with the good will of the business transferred, or the withholding of patronage under the control of the defendant was accomplished through the authority which McQuaid derived from defendant as his partner in any respect, the liability of the defendant is the same as if such acts had been done by him personally.

The ground of the next exception is the charge that "if the firm of Morgan & McQuaid gave their patronage to the towage business to any other than the plaintiffs, whether Morgan knew it or not, that would be a breach of Morgan's covenant to give his patronage to the plaintiffs." The knowledge of Morgan was

immaterial. As his covenant, in this respect, was to perform a positive act, namely, to give his patronage to the plaintiffs, the only material inquiry is whether such act was performed Ignorance on the part of Morgan of what was done by those acting by his authority cannot be alleged, for he was bound to activity in performing his covenant, and that would involve the duty of informing himself as to the reasonable and proper means of performing his agreement.

The court further charged that "McQuaid, acting as the agent of the *Thomas Morgan,* (without regard to who was her owner,) would be an indirect engagement in the business by the firm of Morgan & McQuaid, and hence by Morgan, for Morgan's capital was in the firm, whether he gave the business his personal attention or not."

Clearly, the agent, through whom a business is conducted, may, with propriety, be said to be *engaged in the business,* whether compensated by an interest in the profits of the business or in some other way.

Reading this part of the charge in connection with what preceded it, it is clear that it was intended by the judge, and understood by the jury, that the agency of McQuaid must be under the authority that he possessed as a partner of the firm of Morgarn & McQuaid, to have such effect upon Morgan. The point of this part of the charge was that Morgan's *personal knowledge* was immaterial to the question of the effect of the interest that Morgan & McQuaid had in the agency, conducted by McQuaid. It cannot be assumed that it was either intended or understood that McQuaid's agency, independent of the interest that the firm had in such agency, could produce the effect pointed out by the charge. In this view, this part of the charge is free from error.

Again, the court charged: "If you believe that the *Thomas Morgan* was brought here and put into the towage business by the firm of Morgan & McQuaid, or that while here, that firm gave her their patronage in that business, either would be a breach of the covenant by Morgan not to engage, directly or indirectly, in the towage business, but to give his patronage to the plaintiffs." This charge was entirely free from error. After making the covenant, the obligor had no right to place himself in such a

position as to be unable to perform his engagements therein contracted; so that even if he had been unable, as a partner of the firm of Morgan & McQuaid, to control the conduct of the business of such firm in harmony with his obligations towards the plaintiffs, that fact would not excuse him. But the ability of Morgan to control the conduct of the partnership has not been put in question, and it must be assumed, that had an effort been made for that purpose, he would have succeeded in so doing.

We find no error in the charge as to the measure of damages. The important part of the charge on this subject, is as follows: "In estimating damages, you will first take the sums in evidence as the price of the towage of three vessels, and allow such further sum short of $10,000, as, in your view, the plaintiffs have suffered in their business generally, on account of the breach of this bond." This charge is viewed by the appellant as violating the rule that confines damages to that which results as the natural consequence of every act complained of, and excludes remote and contingent damages. It does not appear to us that such is the effect of the charge. The inquiry which the charge pointed out to the jury, did not relate to the connection that must exist between the act of wrong and the damages entailed by it in order to satisfy the rules of law, but solely to the character of the subject of damage—that is, the nature of the business, which, under the covenant, could be alleged to have sustained damage. The defendant appears to have contended that only the immediate profits of the business of towage could be made the subject of damage, while the plaintiffs contended, that, through the relations of the towage business to the general mercantile business of the plaintiffs, damage to their general business could be considered. It was for the jury to say whether the towage business, from its nature, and from the mode in which it was conducted in the port of Georgetown, was an accessory of a general mercantile business, or a separate and distinct business by itself. If, in the view and contemplation of the parties, apparent from applying the terms of the covenant to the character of the business to which it related, the business of towage was a valuable feature of a grand mercantile business, then damage to such mercantile

business would be within the intention of the parties, and the jury could have found, where such damage was direct and immediate, that the plaintiffs have "suffered in their business generally, on account of the breach of the bond." It was competent for either of the parties to have obtained the necessary instructions to direct the jury in making such an inquiry, but no such instructions appear to have been sought, and no charge on that point given, so that it must be assumed that the jury had in view the proper understanding of the nature of the inquiry submitted to them in this part of the charge, and the limits under which it was possible for them to say that the plaintiffs had sustained damage in their general business through the breach of the bond. They were instructed to inquire whether the plaintiffs may have "suffered in their business generally, on account of the breach of the bond." Admitting that they could not suffer damages in their business generally, *on account of the breach of the bond,* unless there was such a connection between their general business and the particular business of towage, according to the intention of the agreement, construed with reference to the nature and customary mode of conducting such business, that an act of wrong committed in violation of the terms of the covenant would naturally and directly inflict damage upon such general business as would be the case where the business of towage was understood and intended as a mere auxiliary to the general business of the firm, still, if the jury properly applied all the legal rules pertinent to such an inquiry, which, it must be assumed, they did, no ground exists to assume that their verdict was improperly influenced by the charge, though exceedingly general in its nature. When a charge is general, as it is in the power of the parties to cause it to be made specific through the medium of proper prayers for instructions; if this is neglected, the charge will be sustained if any reasonable view can be taken of it that will harmonize it with the rules of law. The parties having the right, by properly directing the attention of the Circuit judge to what they deem material propositions of law, to secure an exact and particular application of the rules of law to this evidence, if they do not employ these means, they should not be at liberty to complain

of the indefiniteness of the charge.  A general charge is not expected to distinguish accurately the line that separates matters of fact and law.  If, then, the charge leaves it to the jury to define for themselves the nature of that damage which the law contemplates as the natural result of the breach of the bond, and the parties are prejudiced thereby, such prejudice must be ascribed to the want of specific instructions, and the want of such instructions in the present case to the absence of prayers for such instructions.

The exceptions must be overruled, and the appeal dismissed.

McIVER and McGOWAN, A. J.'s, concurred.